UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
LEYLA S-H,

                Plaintiff,       <u>DECISION AND ORDER</u>
                                1:25-CV-03735-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
--------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In July of 2012, Plaintiff Leyla S-H.[1] applied for Disability Insurance

Benefits and Supplement Security Income Benefits under the Social

Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by the Law Office of Charles E. Binder and Harry J.

Binder, LLP, Charles E. Binder, Esq., of counsel, commenced this action

seeking judicial review of the Commissioner's denial of benefits under 42

U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction

of a United States Magistrate Judge. (Docket No. 7).

This case was referred to the undersigned on April 21, 2026.

Presently pending are the parties' competing requests for judgment on the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's request is due to be denied, the Commissioner's request is granted, and this case is dismissed.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on July 25, 2012, alleging disability beginning October 10, 2011. (T at 55, 129-141).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on December 3, 2013, before ALJ Jerome Hornblass. (T at 38-53). On February 18, 2014, ALJ Hornblass issued a decision denying the applications for benefits. (T at 21-34).  The Appeals Council denied Plaintiff's request for review on April 15, 2015. (T at 1-5).

Plaintiff commenced an action seeking judicial review in the United States District Court for the Eastern District of New York.  On February 5, 2016, the Honorable Margo K. Brodie, United States District Judge, ordered a remand for further proceedings by stipulation of the parties. (T at 526-27).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 8.

A second administrative hearing was held on November 8, 2017, before a new ALJ, Hilton Miller. (T at 431-496).  ALJ Miller issued a decision denying the applications for benefits on March 2, 2018. (T at 402-30).  The Appeals Council denied review on March 22, 2019. (T at 391-98).

Plaintiff commenced an action seeking judicial review in the United States District Court for the Southern District of New York.  On November 18, 2020, the Honorable Ona T. Wang, United States Magistrate Judge, granted Plaintiff judgment on the pleadings and ordered a remand for further proceedings. (T at 1144-45, 1452-68).

A third hearing was held on December 12, 2022, with another new ALJ, Angela Banks. (T at 1072-1101).  Plaintiff amended her alleged onset date to January 1, 2013. (T at 1080).  A further hearing was held before ALJ Banks on October 16, 2023. (T at 1055-1071).

*B.    ALJ's Decision*

On December 19, 2023, ALJ Banks issued a decision denying the applications for benefits. (T at 1019-50).  The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017 (the date last insured) and had not engaged in substantial gainful activity since January 1, 2013 (the amended alleged onset date). (T at 1025).

The ALJ concluded that Plaintiff's degenerative disc disease in the cervical and lumbar spines, bilateral carpal tunnel syndrome, obesity, asthma, bipolar disorder, and PTSD were severe impairments as defined under the Act. (T at 1025).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 1026).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can handle, finger, feel, and operate hand controls frequently and bilaterally; but she can tolerate no more than occasional exposure to respiratory irritants; she can understand, remember and carry out simple instructions; use judgment to make simple work-related decisions; occasionally interact with supervisors, coworkers, and the public; and occasionally deal with changes in a routine work setting. (T at 1028).

The ALJ determined that Plaintiff did not have any past relevant work. (T at 1039).  Considering Plaintiff's age (33 on the amended alleged onset date), education (limited), work experience (no past relevant work), and

4

RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (T at 1039).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between January 1, 2013 (the amended alleged onset date) and December 19, 2023 (the date of the ALJ's decision). (T at 1040).

On March 7, 2025, the Appeals Council denied Plaintiff's request for review, making ALJ Banks's decision the Commissioner's final decision. (T at 1011-1018).

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on May 5, 2025. (Docket No. 1).  On April 3, 2025, Plaintiff filed a brief requesting judgment on the pleadings. (Docket No. 13).  The Commissioner interposed a brief in opposition to Plaintiff's request and in support of a competing request for judgment on the pleadings, on August 29, 2025. (Docket No. 14).  On September 11, 2025, Plaintiff submitted a reply memorandum of law in further support of her request. (Docket No. 15).  The parties submitted supplemental briefing in January and February of 2026. (Docket Nos. 18, 19, 20).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

6

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two primary arguments in support of her request for reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence regarding her mental

functioning was flawed.  Second, she challenges the ALJ's consideration of her subjective complaints.  The Court will address each argument in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

Under the regulations applicable here, an opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).[3]

---

[3] In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence.  The revised regulations apply

However, treating physician opinions are not always dispositive. For example, an opinion will not be afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018). A consultative

---

to claims filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c. Because Plaintiff applied for benefits before that date, the new regulations do not apply here.

physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

Here, the record contains numerous assessments from multiple medical providers regarding Plaintiff's ability to meet the mental demands of basic work activity.  The Court will summarize the assessments and then consider the ALJ's analysis.

### 1. Dr. Fruitman

In December of 2012, Dr. Edward Fruitman, Plaintiff's treating psychiatrist, completed a medical source statement regarding Plaintiff's mental functioning.  Dr. Fruitman assessed moderate impairment with respect to Plaintiff's ability to understand, remember, and carry out instructions; marked limitation interacting with the public; moderate impairment interacting with supervisors and co-workers; and moderate limitation in responding appropriately to usual work situations and to changes in a routine work setting. (T at 231-32).

Dr. Fruitman completed another assessment later in the same month. He reported that he had been treating Plaintiff since July of that year. (T at

11

235).  Dr. Fruitman diagnosed bipolar disorder and assigned a Global Assessment of Functioning ("GAF")[4] range of 50-55. (T at 235).

"A GAF in the range of 41 to 50 indicates '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) ….'" *Zabala v. Astrue*, 595 F.3d 402, 406 n.2 (2d Cir. 2010)(citation omitted).

"A GAF score from 60-51 represents moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with co-workers)." *Vanterpool v. Colvin*, No. 12-CV-08789 (VEC)(SN), 2014 U.S. Dist. LEXIS 68303, at *6 n.5 (S.D.N.Y. Apr. 22, 2014).

Dr. Fruitman opined that Plaintiff was moderately limited with respect to understanding, remembering, and carrying out simple instructions; had marked impairment as to detailed instructions; was moderately limited as to maintaining attention and concentration for extended periods and sustaining an ordinary routine without supervision; and had marked impairment with respect to performing activities within a schedule, maintaining regular attendance, being punctual within customary

---

[4] The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004).

tolerances, and working in coordination with or proximity to others without being distracted. (T at 238).

Dr. Fruitman assessed moderate limitation with respect to Plaintiff's ability to complete a normal workweek; marked impairment as to most aspects of social interaction; and marked limitation in her ability to respond appropriately to changes in the work setting. (T at 239).  Dr. Fruitman believed Plaintiff would be absent from work about two to three times a month due to her impairments or treatment. (T at 242).

Dr. Fruitman completed another questionnaire in August of 2013.  He diagnosed bipolar disorder, anxiety disorder, and depressive disorder and assigned a GAF score of 60. (T at 364).  He assessed moderate impairment with respect to Plaintiff's ability to meet the mental demands of basic work activity. (T at 367-69). Dr. Fruitman again predicted that Plaintiff would be absent from work about two to three times a month due to her impairments or treatment. (T at 371).

### 2. Dr. Broska

Dr. Alene Broska performed a consultative psychiatric evaluation in September of 2012.  She diagnosed bipolar disorder. (T at 223).  Dr. Broska assessed very few limitations in Plaintiff's mental functioning but did

note that Plaintiff might not "relate adequately with others or appropriately deal with stress." (T at 222).

### 3. Dr. Reddy

In October of 2012, Dr. V. Reddy, a non-examining State Agency review physician, assessed mild restriction in Plaintiff's activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (T at 61).

### 4. Mental Health Counselor Lopez

Plaintiff began treating with Maria Elena Lopez, LMHC, in April of 2021. (T at 2571). Ms. Lopez completed a mental functioning questionnaire in November of 2022.  She reported seeing Plaintiff weekly and diagnosed PTSD. (T at 3384).

Ms. Lopez assessed no limitation in Plaintiff's understanding and memory; moderate impairment with respect to maintaining attention and concentration for extended periods; and moderate-to-marked limitation as to performing activities within a schedule, consistently being punctual, and completing a workday without interruptions from psychological symptoms. (T at 3387). Ms. Lopez opined that Plaintiff had moderate-to-marked impairment with respect to social interactions. (T at 3387).  She believed

14

Plaintiff would be absent from work about once a month due to her impairments or treatment. (T at 3388).

Ms. Lopez completed a second questionnaire in August of 2023, which contained the same assessment of Plaintiff's mental functioning. (T at 3608-12).

### 5. Dr. Quarles

Dr. Brickell Quarles performed a consultative psychological evaluation in December of 2016.  He diagnosed PTSD, bipolar disorder, and history of cannabis abuse. (T at 1521).  Dr. Quarles opined that Plaintiff would have severe limitations completing simple and complex tasks in a work environment, severe difficulties in social interaction, and would experience challenges maintaining a regular work schedule. (T at 1521).  Dr. Quarles assessed marked impairment with respect to Plaintiff's ability to understand, remember, and carry out instructions, and marked limitation with respect to responding appropriately to supervisors, co-workers, and work pressures. (T at 1522-23).

### 6. Dr. Blitz

Dr. Jennifer Blitz, a non-examining psychologist, reviewed the record and testified at the administrative hearing held on November 8, 2017.  Dr. Blitz began her testimony by noting that there appeared to be a "substantial

15

amount of treatment records that are not in [the] record." (T at 458).  She identified bipolar disorder as a severe impairment. (T at 458-59).

Dr. Blitz opined that Plaintiff was limited to simple, routine tasks, could tolerate only occasional interaction with coworkers and supervisors, and could not interact with the public. (T at 459).  She believed that Plaintiff could miss some work but did not believe the record supported Dr. Fruitman's opinion that Plaintiff would be absent two or three days per month. (T at 461).

### 7. ALJ's Analysis

As noted above, the ALJ concluded that Plaintiff retained the RFC to perform a reduced range of work, with significant restriction in her ability to meet the mental demands of basic work activity. (T at 1028).

In reaching this conclusion, the ALJ accepted the medical opinion evidence of record finding moderate impairment in Plaintiff's mental functioning, but discounted the assessment of mild limitation (from Dr. Reddy), as well as the assessments of marked impairment and/or excessive absenteeism (from the treating and examining providers). (T at 1036-39).

16

For the reasons that follow, the Court finds that the ALJ's assessment must be sustained under the deferential standard of review applicable here. Here's why.

First, Dr. Broska (a consultative examiner) and Dr. Reedy (State Agency review consultant) both found no more than mild impairment in Plaintiff's mental functioning. (T at 61, 222-23).

Although the ALJ found a greater degree of restriction, these opinions nevertheless provide support for the ALJ's decision to discount the more extreme assessments of limitation. *See Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018)("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand.")(emphasis in original)(collecting cases); *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999)(noting that "the ALJ's RFC finding need not track any one medical opinion").

Second, while Dr. Fruitman believed Plaintiff had more significant limitation in social functioning and in her ability to sustain a schedule, he assessed moderate impairment in Plaintiff's overall mental functioning. (T at 231-32, 364, 367-69, 371). The ALJ's decision to accept the moderate limitations while discounting the assessment of excessive absenteeism is

17

generally supported by the opinion of Dr. Blitz, the medical expert who testified during one of the administrative hearings. (T at 458-61).

Third, the ALJ relied on a reasonable reading of the treatment record, which documented sustained symptoms, but contained generally unremarkable clinical findings. (T at 251-59, 262-63, 268-75, 277-79, 281-84, 287, 289-91, 293, 300-01, 318-21, 744-46, 763, 768, 773, 777, 785, 797-811, 893-961, 1572-659, 2238-743, 3304-380, 3390-471, 3495-607, 3624-55).[5]

Although ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount marked or extreme limitations. *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED),

---

[5] Plaintiff points out that many of Dr. Fruitman's notes are difficult to decipher due to his handwriting. However, Dr. Blitz testified that she found the notes legible (T at 462-63) and the record contains typed assessments from Dr. Fruitman. (T at 318, 1032, 1037).

2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

Fourth, the ALJ gave appropriate consideration to Plaintiff's activities of daily living, which included independent living and childcare. (T at 1032-32, 1037-38). While ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount an assessment of marked impairment where, as here, the claimant's activities could reasonably be considered inconsistent with that level of impairment. *See Riaz v. Comm'r of Soc. Sec.*, No. 20CIV8418JPCSLC, 2022 WL 6564018, at *15 (S.D.N.Y. Aug. 5, 2022)(collecting cases), *report and recommendation adopted*, No. 20CIV8418JPCSLC, 2022 WL 4482297 (S.D.N.Y. Sept. 27, 2022).

Lastly, it is significant that the ALJ did not disregard the evidence of impairment in Plaintiff's mental functioning by limiting her to work involving simple instructions and work-related decisions; only occasional social interaction; and no more than occasional changes in a routine work setting. (T at 1028).

19

To the extent the record evidences impairment in Plaintiff's mental functioning, the ALJ adequately addressed those limitations by incorporating these restrictions into the RFC determination.  *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *see also Platt v. Comm'r of Soc. Sec.*, 588 F. Supp. 3d 412, 422 (S.D.N.Y. 2022)(collecting cases); *Walters v. Saul*, No. CV 19-3232 (AYS), 2021 WL 4861521, at *11 (E.D.N.Y. Oct. 19, 2021); *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 12 (W.D.N.Y. 2021).

In supplemental briefing, Plaintiff cites a recent decision from the Second Circuit, *Nunez v. Comm'r of Soc. Sec.*, 164 F. 4th 60 (2d Cir. 2025). Plaintiff argues that *Nunez* (a) calls into question whether the limitations incorporated into the RFC determination adequately account for moderate mental impairment and (b) suggests that the ALJ placed undue emphasis on Plaintiff's activities of daily living.

In *Nunez*, however, the Circuit "reviewed the entirety of the ALJ's decision and the administrative record and [could not] find *any* justification for the ALJ's RFC determination …." *Id.* at 71 (emphasis in original).  The

20

present case is readily distinguishable.  As discussed above, the ALJ here provided a detailed explanation, relied on a reasonable reading of the record, and appropriately reconciled competing medical opinions.

Moreover, courts considering *Nunez*, including the Second Circuit, have declined to read it as overruling the significant body of case law finding that moderate impairment in mental functioning can be adequately addressed by restrictions such as those incorporated by the ALJ here. *See Marie F.G., Comm'r of Soc. Sec.*, No. 25 CIV. 416 (NSR)(JCM), 2026 WL 540604, at *16 (S.D.N.Y. Feb. 12, 2026), *report and recommendation adopted sub nom. Galarza v. Comm'r of Soc. Sec.*, No. 25 CIV. 416 (NSR)(JCM), 2026 WL 1078558 (S.D.N.Y. Apr. 21, 2026); *Benjamin v. Comm'r of Soc. Sec.*, No. 25-2343, 2026 WL 697004, at *2, n.2  (2d Cir. Mar. 12, 2026).

"Substantial evidence is "a very deferential standard of review — even more so than the 'clearly erroneous' standard." *Brault v. SSA*, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam) (citation omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." Id. at 448 (emphasis in original) (citation and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited

21

and substantial deference is to be afforded the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008)(citation and internal quotation marks omitted).

Indeed, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Id.* (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.")(citation omitted).

Here, the ALJ's RFC determination is supported by a reasonable reading of the record and appropriate reconciliation of the medical opinion evidence.  It must therefore be sustained under the deferential standard of review applicable here.

B.    *Subjective Complaints*

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's

23

reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: Social anxiety prevents her from working. (T at 46).  Her symptoms include anger, panic attacks, decreased attention and concentration, and impaired memory. (T at 46, 48-49, 453).  She relies on family members for help with household chores. (T at 437-39, 1082, 1084-85).  Personal hygiene is inconsistent. (T at 450-51).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 1029).

For the following reasons, the Court finds the ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence and is consistent with applicable law.

The ALJ found Plaintiff's complaints of disabling psychiatric symptoms not fully consistent with the treatment record, which, as discussed above, the ALJ reasonably read as documenting persistent symptoms, but generally unremarkable clinical findings and stable functioning. (T at 1032-35).

An ALJ has the discretion to discount a claimant's subjective complaints where, as here, those complaints can be considered

inconsistent with the overall clinical assessments and treatment notes. *See Kuchenmeister v. Berryhill*, No. 16 Civ. 7975, 2018 U.S. Dist. LEXIS 9750, at *59 (S.D.N.Y. Jan. 19, 2018); *Rodriguez v. Colvin*, No. 15 Civ. 6350, 2016 U.S. Dist. LEXIS 159003, at *68-69 (S.D.N.Y. Nov. 14, 2016); *Robles v. Colvin*, No. 16CV1557 (KMK) (LMS), 2019 U.S. Dist. LEXIS 62118, at *51 (S.D.N.Y. Apr. 9, 2019).

In addition, as discussed above, the ALJ gave appropriate consideration to Plaintiff's activities of daily living, reasonably reconciled the competing medical evidence, and adequately addressed the evidence of impairment by incorporating significant mental limitations into the RFC determination.

This is sufficient to sustain the disability determination under the deferential standard of review applicable here. *See Stanton v. Astrue,* 370 Fed App'x 231, 234 (2d Cir. 2010)(stating that courts will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); *Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31, 2013)(finding that ALJ "met his burden in finding [subjective] claims not entirely credible because [claimant] remains functional in terms of activities of daily living and the

objective medical evidence fails to support her claims of total disability based on pain").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's request for judgment on the pleadings is DENIED; the Commissioner's request for Judgment on the Pleadings is GRANTED; and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: May 28, 2026                     *s/ Gary R. Jones*

                                        GARY R. JONES
                                        United States Magistrate Judge

27